### In re Vermont Verde Antique International, Inc.

[811 A.2d 181]

No. 01-116

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 6, 2002

---

*John D. Hansen,* Rutland, for Appellant.

*William H. Sorrell,* Attorney General, *Rebecca M. Ellis,* Assistant Attorney General, and *Laura Wood,* Law Clerk (On the Brief), Montpelier, for Amicus Curiae State.

**Morse, J.** Vermont Verde Antique International, Inc. (VVA) appeals from an Environmental Board decision upholding the jurisdictional opinion of its district coordinator that VVA's quarrying operation fell within the jurisdiction of Act 250 because it had undertaken a substantial change to its operations. VVA contends the Board erroneously: (1) issued a sua sponte jurisdictional opinion without statutory authority; (2) failed to provide an adequately detailed statement of the matters at issue in the case; (3) ruled against VVA in the absence of an adverse party or evidence of a substantial change; and (4) placed the burden of production of evidence showing no substantial change on VVA instead of requiring the State to prove that there had been a substantial change. We agree with the first contention, and therefore reverse.

The underlying facts may be summarized as follows. In 1993, VVA purchased a marble quarrying business that had been in operation for many years and thus qualified as an existing operation that did not require a permit under Act 250. See 10 V.S.A. § 6081(b) (projects and subdivisions existing prior to June 1, 1970 do not require Act 250 permit). In September 1999, the District No. 3 Environmental Coordinator sent a letter to VVA stating that she had received a complaint about the quarry and requesting a history of its operations. VVA complied with the request. In February 2000, the assistant environmental coordinator issued a jurisdictional opinion, finding that the quarry had undergone a "substantial change" in its operation that required an Act 250 permit. See 10 V.S.A. § 6081(b) (exemption for

preexisting development does not apply "to any substantial change in such excepted ... development"); Environmental Board Rule 2(g) (substantial change is "any change in development ... which may result in significant impact with respect to any of the [ten Act 250 criteria]."). The jurisdictional opinion stated that it was issued "in response to correspondence between [VVA] and [the coordinator] ... which began with [the coordinator's] letter of September 1, 1999."

VVA sought a reconsideration of the jurisdictional opinion with the district coordinator, who affirmed the decision. VVA then petitioned the Board for a declaratory ruling. In July 2000, following a prehearing conference attended only by VVA, the Board chair issued a prehearing conference report and order stating that the issue on appeal was "[W]hether there has been a 'substantial change' to the Project, a pre-existing development, that requires an Act 250 Permit pursuant to 10 V.S.A. 6081(b) and EBR 2(G)." VVA objected to the report on several grounds, including: (1) VVA should not have the burden of production in disproving an increase in the level of quarrying activity; (2) the Board had not articulated a substantive legal standard by which the case would be adjudicated; and (3) the Board lacked the statutory authority to issue a jurisdictional opinion on its own motion. These objections were referred to the full Board. In a memorandum of decision issued in September 2000, the Board rejected VVA's objections but noted that VVA had not waived its right to an evidentiary hearing or its right to raise constitutional issues.

The Board conducted a hearing on VVA's petition in December 2000. VVA was the only party to participate in the hearing, and offered no evidence, arguing that the Board lacked the statutory authority to issue a sua sponte jurisdictional order, and that VVA did not have the burden of production to disprove a substantial change. The Board nevertheless upheld the jurisdictional order and dismissed the petition because of VVA's "failure to meet its burden of producing evidence." This appeal followed.

VVA essentially challenges the validity of Environmental Board Rule 3(c), part of which authorizes disctrict coordinators to issue jurisdictional orders sua sponte. See Envionmental Board Rule 3(c) ("In addition, district coordinators may issue Jurisdictional Opinions when, in their judgment, the applicability of Act 250, these rules or an order of the board needs to be determined."). VVA argues that the rule is outside of the scope of authority conferred on the Board by 10 V.S.A. § 6007(c), which sets forth the procedures for obtaining a jurisdictional order. It is, of course, axiomatic that an administrative

body may promulgate only those rules within the scope of its legislative grant of authority. See *In re Agency of Admin.*, 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982) (agency cannot use its rule-making authority to exceed or compromise its statutory purpose). An agency rule must be reasonably related to the intent of the enabling legislation. *In re Baptist Fellowship of Randolph, Inc.*, 144 Vt. 636, 638, 481 A.2d 1274, 1275 (1984). To determine the scope of authority vested in an administrative agency by a statutory grant of power, we look to its enabling legislation. *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 113, 666 A.2d 1170, 1172-73 (1995). Our objective in construing a statute is to give effect to the Legislature's intent. *Mass. Mun. Wholesale Elec. Co. v. State*, 161 Vt. 346, 355, 639 A.2d 995, 1001 (1994). In determining that intent, we examine the whole statute as well as its parts, considering its subject matter, its effect and consequences, and the "reason and spirit of the law." *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136, 636 A.2d 744, 749 (1993).

Although we approach the examination of actions of an administrative body under a presumption of validity, *Vt. Ass'n of Realtors v. State*, 156 Vt. 525, 530, 593 A.2d 462, 465 (1991), adjudicatory functions of an administrative body are reviewed with special vigilance. See *Agency of Admin.*, 141 Vt. at 75, 444 A.2d at 1352 ("Where [an administrative body] exercises its adjudicative function we will be especially vigilant, since proper utilization of the judicial process is unrelated to expertise in any particular subject matter.").

Here, the Board derives its general rule-making authority from 3 V.S.A. § 2803(b), which grants the Board "the power to adopt, amend and repeal rules and regulations, to conduct hearings, to adjudicate controversies and to issue and enforce orders, in the manner and to the extent to which those powers are given to [it] by law." The enabling legislation specifically at issue in this case is 10 V.S.A. § 6007(c), which provides that "any person may submit to the district coordinator an 'Act 250 Disclosure Statement' and other information required by the board, and may request a jurisdictional opinion from the district coordinator concerning the applicability of this chapter." After a request is filed, the statute requires the district coordinator to make a jurisdictional determination, which then becomes final unless it is appealed to the Board by any statutory party within thirty days. 10 V.S.A. § 6007(c).

The State in its amicus curiae brief argues that, by referring to "any person," the statute plainly authorizes district coordinators to issue jurisdictional opinions on their own motion. The words of a

statute are not to be read in isolation, however, but rather in the context and structure of the statute as a whole. *Winey*, 161 Vt. at 136, 636 A.2d at 749. Here, the statute provides that "any person" may request a jurisdictional opinion *"from* the district coordinator." 10 V.S.A. § 6007(c) (emphasis added). Read in context, this suggests that "any person" refers broadly to third parties exclusive of the coordinator, who is authorized to rule on such requests, but not to make them.

This conclusion is reinforced by the overall enforcement structure of the statute. The Legislature has created several enforcement provisions for the Board to prosecute violations of Act 250 in either superior or environmental court. See 10 V.S.A. § 8004 (secretary of agency of natural resources shall commence enforcement actions at the request of the Board); *id.* § 8221 (secretary of agency of natural resources or Board may bring civil actions in superior court). Under these provisions, landowners potentially subject to Act 250 jurisdiction may avail themselves of all of the protections and processes of a formal, adversarial proceeding. Jurisdictional opinions, by way of contrast, cast the Board in the role of adjudicator, determining the applicability of Act 250 to the project or development in question. The statutory scheme thus indicates that the Legislature contemplated separate roles for the Board as a party in an enforcement action, and as an adjudicatory body in jurisdictional determinations made at the request of the landowner or a third party.

The Legislature has taken care to separate the prosecutorial and adjudicatory functions of the Board, which serves in turn to maintain its integrity when functioning as an adjudicatory forum for resolving jurisdictional questions. Viewed in this context, nothing in the language of § 6007(c) indicates a legislative intent to transform the request for a jurisdictional opinion into the equivalent of an enforcement action. Although the statute provides that "any person" may request a jurisdictional opinion, the statutory context and structure demonstrates a legislative understanding that the request will originate from the landowner or an interested third party, not from an official of the Board itself.

An alternative ruling would result in a peculiar scenario. Not only would the Court be granting the Board the right to exceed its legislative mandate, but it would be allowing the district coordinators to issue jurisdictional orders in the absence of a landowner or third party request. This would put the Environmental Board in the awkward position of adjudicating orders based on evidence offered by

its constituent officers. The district coordinator did not even appear and offer evidence at VVA's hearing before the Board. VVA was both denied the opportunity to confront an opposing party and shouldered with the burden of disproving allegations raised by the very entity charged with deciding their outcome. Accepting such a situation would put future parties before the Board in the manner that a schoolboy goes before the principal, and at a comparable disadvantage.

We are compelled, therefore, to conclude that Environmental Board Rule 3(c), to the extent that it authorizes the issuance of a jurisdictional opinion at the request of a district coordinator, exceeds the scope of § 6007(c) and is invalid. Accordingly, the jurisdictional opinion in this case was unenforceable and invalid, and the Board's decision affirming the order must be reversed.

*Reversed.*